## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JERMAINE WOODS,

  Plaintiff,

   v.

DISTRICT OF COLUMBIA and DANIEL LEO

  Defendants.

Civil Action No. 20-0782 (CKK)

### MEMORANDUM OPINION
(November 2, 2020)

Now before the Court is the Motion to Dismiss, or in the alternative, for Summary Judgment (the "Motion"), *see* ECF No. 6, of Officer Daniel Leo and the District of Columbia (collectively, "Defendants"). Upon consideration of the briefing, the relevant authorities, and the record as a whole,[1] the Court will **GRANT** Defendants' Motion and **DISMISS** Plaintiff's claims, *see* ECF No. 1-1, against both the District of Columbia and Officer Leo **WITHOUT PREJUDICE**.

First, the Court dismisses Plaintiff's common law claims against the District of Columbia in Counts I and II of the Complaint because Plaintiff has not demonstrated compliance with the notice requirements of D.C. Code § 12-309. In addition, the Court must dismiss all of Plaintiff's claims against the District of Columbia, including his claim for municipal liability under 42 U.S.C. § 1983, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Next, the Court also dismisses each of Plaintiff's claims against Officer Leo, in his individual

---

[1] The Court's consideration has focused on the following:
- Compl., ECF No. 1-1;
- Defs.' Mem. of P&A in Supp. of Defs.' Mot. to Dismiss or for Partial Summ. J. ("Defs.' Mot."), ECF No. 6;
- Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), ECF No. 9;
- Defs.' Reply, ECF No. 10.

capacity, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  Finally, Plaintiff purports to sue Officer Leo in his "official" capacity. Compl. ¶ 5.  But these "official capacity" claims against Officer Leo are duplicative of the claims Plaintiff asserts against the District of Columbia.  *See Mack v. Aspen of DC, Inc.*, 248 F. Supp. 3d 215, 218 (D.D.C. 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  As such, the Court will treat these "official capacity" claims against Officer Leo in the same manner as Plaintiff's claims against the District of Columbia, which the Court dismisses herein.  *See Harris v. Bowser*, 404 F. Supp. 3d 190, 195–96 (D.D.C. 2019), *aff'd*, No. 19-5246, 2020 WL 873558 (D.C. Cir. Feb. 14, 2020); *Cotton v. District of Columbia*, 421 F. Supp. 2d 83, 86 (D.D.C. 2006).

## I.    BACKGROUND

On January 18, 2017, an off-duty police officer with the Metropolitan Police Department ("MPD") of Washington, D.C. reported that the driver of a vehicle (the "Suspect") at the intersection of 3rd and U Streets, Northeast, had fired multiple gun shots in the area.  Compl. ¶ 7. Sometime thereafter, the Suspect picked up Mr. Jermaine Woods ("Plaintiff") in his vehicle and "attempted to drive [Plaintiff] to his home." *Id.* ¶ 9.  When the Suspect picked Plaintiff up, Plaintiff was allegedly unaware of the Suspect's involvement in the prior shooting.  *See id.*  Also unbeknownst to Plaintiff, the off-duty MPD officer who had observed the earlier shooting, provided a description of the Suspect and his vehicle to fellow MPD officers. *See id.* ¶ 8.  These MPD officers, including Officer Daniel Leo, were then able to locate the Suspect's vehicle "operating in the area of the 300 block of W Street, Northwest" and follow the Suspect until he arrived at Plaintiff's house. *Id.* ¶¶ 8–10.

When the Suspect arrived at Plaintiff's house, the MPD officers pulled their police vehicle in behind the Suspect's car. *Id.* ¶ 10.  Then, as Plaintiff exited the Suspect's car and began to walk towards the gate behind his house, *see id.*, Officer Leo allegedly exited the police vehicle and

"instantly began to fire his service weapon at Plaintiff without uttering a single word," *id.* ¶ 11. Concerned for his life, Plaintiff "immediately dropped to the ground and attempted to crawl under a nearby van for safety." *Id.* ¶ 12. Officer Leo, however, allegedly continued to fire his service weapon at Plaintiff, though Plaintiff does not allege that he was injured during this gunfire. *Id.* ¶ 13. Officer Leo then proceeded to arrest Plaintiff, handcuff him, and place him in the back of the MPD police vehicle for "several hours." *Id.* ¶¶ 14–15. Thereafter, Plaintiff "was taken to Providence Hospital to treat physical injuries attributed to his arrest." *Id.* ¶ 15. He was released from police custody and the hospital on that same day. *Id.*

Plaintiff has "proclaimed his innocence and sought explanations for [Officer Leo's] violent actions." *Id.* ¶ 16. On January 14, 2020, Plaintiff filed a civil action in the Superior Court of the District of Columbia asserting three claims against both Officer Leo and the District of Columbia. *See generally* Compl., ECF No. 1-1. Defendants, however, removed Plaintiff's action to this Court, *see* Not. of Removal, ECF No. 1, at 1–3, and subsequently moved to dismiss Plaintiff's action in its entirety under Rule 12(b)(6) or, in the alternative, under Rule 56. The briefing on Defendants' Motion has closed and the Motion is now ripe for this Court's review.

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

## III.    DISCUSSION

In his Complaint, Plaintiff asserts three distinct claims: (1) Negligent Infliction of Emotional Distress, (2) Negligent Training and Supervision, and (3) an Excessive Force claim under 42 U.S.C. § 1983.  *See* Compl. ¶¶ 22–37.  Plaintiff asserts each claim against both the District of Columbia and Officer Leo, in his individual capacity.  For the reasons set forth herein, the Court will **DISMISS** each claim against the District of Columbia and Officer Leo **WITHOUT PREJUDICE**.

### A.  Section 12-309 Notice

In Counts I and II of the Complaint, Plaintiff seeks damages from the District of Columbia under common law claims for Negligent Infliction of Emotional Distress and Negligent Training and Supervision.  *See* Compl. ¶¶ 22–28.  As a threshold matter, the Court must dismiss these common law claims against the District of Columbia because Plaintiff failed "to provide proper notice of those claims pursuant to D.C. Code § 12-309."  *Martin v. District of Columbia*, 720 F. Supp. 2d 19, 24 (D.D.C. 2010).  Specifically, § 12-309 provides that "an action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage."  D.C. Code § 12-309(a).  Compliance with § 12-309 is "mandatory as a prerequisite to filing suit against the District," *Hubbard v. Chidel*, 790

4

A.2d 558, 571–72 (D.C. 2002) (quotation omitted), and unless a plaintiff demonstrates such compliance, his "suit against the District is properly dismissed," *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000) (quotation omitted).

Plaintiff advances multiple arguments regarding § 12-309 notice, none of which is availing. As an initial matter, Plaintiff's Complaint offers no more than the conclusory allegation that "the District of Columbia was given notice of this potential claim consistent with D.C. Code § 12-309." Compl. ¶ 2 n.1.  The Complaint, however, provides no factual allegations about when this notice was given, let alone that the notice was properly given to the District of Columbia within six months of Plaintiff's alleged injury on January 18, 2017.  *See* Compl. ¶ 7.  Neither does the Complaint offer factual allegations regarding to whom Plaintiff provided the notice, or even what the contents of the notice were.  *Cf. Iqbal*, 556 U.S. at 678.  As such, there are no factual allegations in the Complaint from which the Court could plausibly infer that Plaintiff "provide[d] written notice of the approximate time, place, cause, and circumstances of [his] injury or damage to the Mayor of the District of Columbia," in compliance with § 12-309.  *Martin*, 720 F. Supp. 2d at 24. This deficiency alone requires the dismissal of Plaintiff's common law claims against the District of Columbia.  *See id.* at 25 n.6 (dismissing common law claims under Rule 12(b)(6) for failure to provide notice under § 12-309); *Nutt v. District of Columbia Gov't*, No. CV 19-3220 (ABJ), 2020 WL 4597100, at *4–5 (D.D.C. Aug. 11, 2020) (dismissing common law claims against the District of Columbia where "the complaint fail[ed] to allege any facts to show that plaintiff complied with the notice requirement" of § 12-309).

Plaintiff attempts to remedy this deficiency by arguing in his opposition "that existing police reports provide enough notice."  Pl.'s Opp'n at 11.  The police reports Plaintiff references, however, do not provide the District of Columbia with adequate § 12-309 notice of his common

law claims.[2]   In general, a plaintiff may rely upon a police report for purposes of notice, as § 12–309 provides that "[a] report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section."  D.C. Code § 12-309(a).  "But the mere existence of a police report does not necessarily mean that the District has received the type of actual notice which § 12-309 contemplates."  *Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 136 (D.D.C. 2015) (quotation omitted).  Instead, the police report still "'must contain information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice.'"  *Id.* at 136–37 (quoting *Washington v. District of Columbia*, 429 A.2d 1362, 1367 n.17 (D.C. 1981)).  Accordingly, "[t]he proper inquiry is whether the District should have anticipated, as a consequence of receiving the police reports, that a complaint by the plaintiff would be forthcoming."  *Harris*, 404 F. Supp. 3d at 199 (quotation omitted).

Here, the operative MPD public incident report describing the January 18, 2017 events referenced in the Complaint does not even mention Plaintiff.  *See* Defs.' Mot., Ex. 2 (Public Incident Rpt.), at 6; Compl. ¶¶ 7–21.  To the contrary, this MPD report focuses entirely on the Suspect's acts of shooting, his reckless driving, and his ultimate arrest.  *See* Defs.' Mot., Ex. 2 (Public Incident Rpt.), at 6.  The public incident report does not describe Plaintiff's arrest or Officer Leo's alleged decision to fire multiple rounds at Plaintiff without warning, facts essential to Plaintiff's present claims against the District of Columbia.  *See id.*; Compl. ¶¶ 9–13.  Relatedly, the MPD Use of Force Incident Report ("UFIR") addressing the January 18, 2017 events also fails

---

[2] The Complaint refers to the District of Columbia's failure to investigate and report the events surrounding Plaintiff's arrest.  *See* Compl. ¶ 33.  The Court will, therefore, take judicial notice of the attached police reports without converting this motion into a motion for summary judgment.  *See Martin*, 720 F. Supp. 2d at 25 n.6 ("Although the police report was not attached to the complaint, the Court will treat it as incorporated therein . . . and therefore declines to convert defendant's motion to dismiss to a motion for summary judgment."); *Harris*, 404 F. Supp. 3d at 199 n.6 (taking judicial notice of police report attached to the District's motion to dismiss).  Moreover, the Court rests its dismissal of Plaintiff's claims on the Complaint's facial pleading deficiencies, described herein.

to provide any notice of Plaintiff's present claims against the District of Columbia.  *See* Defs.' Reply, Ex. 1 (UFIR), at 3.  Indeed, the UFIR describes how an MPD officer named Fred Rosario fired gun shots at the driver of a Mercedes Benz, while that individual remained in the car.  *See id.* The report says nothing about Officer Leo firing gun shots at the passenger of the vehicle, after the passenger exited onto the street.  *See id.*; Compl. ¶¶ 7–14.  Together, these reports fall well short of providing the District of Columbia with notice of the cause or circumstances of the claims Plaintiff now asserts.  *See Patrick*, 126 F. Supp. 3d at 136.

Plaintiff, instead, directs the Court to an "MPD Form P-4109, dated January 18, 2017.'" Pl.'s Opp'n at 11; *see also* Pl.'s Opp'n, Ex. 1 (Arrestee Report).  While this "Information to the Arrestee Released without Charge" report does identify Plaintiff and Officer Leo, it still provides no detail about the circumstances of Plaintiff's arrest or the cause of his alleged injury.  *See* Pl.'s Opp'n, Ex. 1 (Arrestee Report).  In fact, this MPD Form P-4109 provides no description of Plaintiff's arrest at all, let alone facts about Officer Leo's alleged use of his firearm against Plaintiff.  *See id.*  As such, this report also falls short of providing the District of Columbia with reasonable notice of Plaintiff's present claims.  *See Washington*, 429 A.2d at 1366; *Harris*, 404 F. Supp. 3d at 200 ("[T]he Harris arrest report does not even suggest that the police injured him, much less that the officers' actions were not legally justified.").  For these reasons, the Court finds that Plaintiff has failed to provide adequate notice of his common law claims under § 12-309.  This shortcoming supplies an independent basis for the dismissal of those common law claims against the District of Columbia in Counts I and II of the Complaint.

**B.  Plaintiff Has Not Alleged A Plausible Claim For Relief Against Either Defendant**

In addition to the notice deficiency under D.C. Code § 12-309, Plaintiff's claims fail because Plaintiff has not presented plausible factual allegations to support them under the pleading

standard set forth in *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Under Rule 12(b)(6), these facial deficiencies merit the independent dismissal of each of Plaintiff's claims against both the District of Columbia and Officer Leo, in his individual capacity.

### 1. Section 1983 Claim for Excessive Force

In Count III of the Complaint, Plaintiff asserts a § 1983 claim for excessive force. As outlined above, this excessive force claim derives from Officer Leo's alleged decision to fire multiple rounds at Plaintiff on January 18, 2017, without warning. *See* Compl. ¶¶ 7–13. Plaintiff attempts to bring this § 1983 claim directly against Officer Leo, in his individual capacity, and also against the District of Columbia under a theory of municipal liability. *See* Compl. ¶¶ 29–37; Pl.'s Opp'n at 5. The Court will address each claim in turn.

### a. Excessive Force Claim Against Officer Leo

Plaintiff's allegation that Officer Leo "instantly began to fire his service weapon at Plaintiff without uttering a single word" is serious. Compl. ¶ 11. And such factual allegations are accepted as true at the pleading stage. *See Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018). Nonetheless, Defendants have identified a threshold pleading deficiency in Plaintiff's § 1983 claim against Officer Leo, which merits attention. Specifically, Defendants point out that Plaintiff's formal § 1983 claim in Count III of the Complaint pertains to the municipal liability of the District of Columbia and not to Officer Leo himself. *See* Defs.' Mot. at 19–20; Compl. ¶¶ 29–37. As a matter of technical pleading, a plaintiff should provide separate statements of distinct claims against individual defendants. *See Onyewuchi v. Gonzalez*, 267 F.R.D. 417, 422 (D.D.C. 2010) (citing 5A Charles A. Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1324). Relatedly, "[a]n individual count must contain a plausible recitation of enough facts to support it." *Rice v.*

8

*District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011)   Plaintiff, however, has not provided

such an individual count here, to support a § 1983 claim against Officer Leo.  *See* Compl. ¶¶ 29–

37.  Such a technical deficiency, however, may be remedied.  Because the Court will dismiss the

Complaint without prejudice, Plaintiff may rectify this pleading deficiency in a future amended

complaint, setting forth any claims specific to Officer Leo in separate counts, as appropriate.

### b.  Excessive Force Claim Against The District of Columbia

Plaintiff also asserts his § 1983 claim directly against the District of Columbia.  *See* Compl.

¶¶ 29–37.  A municipality like the District of Columbia, however, "is liable under § 1983 only

when the municipality itself causes the constitutional violation at issue."  *Lane v. District of

Columbia*, 887 F.3d 480, 487 (D.C. Cir. 2018) (citing *City of Canton v. Harris*, 489 U.S. 378, 385

(1989)).  "[I]n considering whether a plaintiff has stated a claim for municipal liability, the district

court must conduct a two-step inquiry."  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C.

Cir. 2003).  "First, the court must determine whether the complaint states a claim for a predicate

constitutional violation," and second, "the court must determine whether the complaint states a

claim that a custom or policy of the municipality caused the violation."  *Id.*  When considering the

second prong of this analysis, courts "determine whether the plaintiff has alleged . . . that a

municipal policy was the moving force behind the constitutional violation."  *Id.* (quotations

omitted).   In so doing, "[t]here are four basic categories of municipal action a plaintiff may rely

on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal

policymakers; (3) custom or usage; and (4) deliberate indifference."  *Hunter v. District of

Columbia*, 824 F. Supp. 2d 125, 133 (D.D.C. 2011) (citing *Monell v. New York City Dept. of Social

Services*, 436 U.S. 658, 690–94 (1978)); *see also Brown v. District of Columbia*, 514 F.3d 1279,

1283 (D.C. Cir. 2008).

Case 1:20-cv-00782-CKK   Document 13   Filed 11/02/20   Page 10 of 16

The Complaint does not adequately plead municipal liability under this framework.  As an initial matter, the Complaint fails to plausibly allege that any *explicit* municipal policy caused Plaintiff's alleged constitutional injury.  The Complaint does allege that "[a]t all times referenced herein certain policies, customs, and procedures were in place which governed the firing of a service weapon and Defendant Leo's use of excessive force, which require reasonable diligence, justifications and announcement prior to the discharge of a service weapon."  Compl. ¶ 17.  But the Complaint makes clear that "Defendant Leo *did not follow* these policies, customs, or procedures" when allegedly firing at Plaintiff on January 18, 2017.  *Id.* ¶ 18 (emphasis added); *see also id.* ¶ 23.  On their face, these allegations indicate that Officer Leo's actions improperly deviated from official MPD policy.  This is quite contrary to a plausible allegation that an explicit MPD policy caused, or was the "moving force," behind Officer Leo's decision to fire his weapon at Plaintiff without warning.  *Baker*, 326 F.3d at 1306.

Relatedly, Plaintiff has not alleged that his injury was caused by "the action of a policy maker within the government."  *Id.*  Understandably, the Complaint does not allege that Officer Leo himself was an official policymaker for the District of Columbia.  At most, the Complaint alleges "upon information or belief" that "supervisorial officers were on the scene" at the time of the shooting and "failed to take any actions to protect Plaintiff's rights."  Compl. ¶ 21.  But there is no factual detail provided in the Complaint to plausibly allege that these unidentified "supervisorial" officers, or any other MPD personnel, were, in fact, "authorized policymaker[s]" whose actions constituted official policy for the District of Columbia.  *Evangelou v. District of Columbia*, 901 F. Supp. 2d 159, 169 (D.D.C. 2012) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 418 (1997)); *see also Byrd v. District of Columbia*, 807 F. Supp. 2d 37, 75 (D.D.C. 2011) ("These cases crystallize the rule that authority to make municipal policy is the authority to make

10

*final* policy specific to the tortious conduct."). As such, the Complaint does not plausibly allege that any explicit policy or policymaker of the District of Columbia was responsible for Plaintiff's alleged injury.

Instead, the Complaint appears to focus on the existence of either an informal MPD "custom or usage" that sanctioned Officer Leo's shooting or, alternatively, the District of Columbia's "deliberate indifference" towards such actions. *See Baker*, 326 F.3d at 1306. Both approaches, however, fall short. First, to adequately establish an informal "custom or usage," a plaintiff "must allege 'concentrated, fully packed, precisely delineated scenarios' as proof that an unconstitutional policy or custom exists." *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)). "To clear this high hurdle, plaintiffs ordinarily couch 'custom or practice' liability on allegations of 'practices so persistent and widespread as to practically have the force of law.'" *Mancuso*, 999 F. Supp. 2d at 284 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Here, Plaintiff alleges that "Defendant Leo's unconstitutional use of force . . . was carried out pursuant to a policy, pattern of practice, or custom, whether formal or informal, which violates the constitutional rights of persons situated such as the Plaintiff . . ." Compl. ¶ 35. Yet, the Complaint provides no detail whatsoever regarding any past practices within MPD that could plausibly support the existence of the informal "custom" Plaintiff invokes. This is plainly insufficient to plausibly allege that the District of Columbia itself caused Plaintiff's purported constitutional injury through some "custom or usage" in effect at the time of Officer Leo's actions. *See Mancuso*, 999 F. Supp. 2d at 284.

Similarly, the Complaint fails to adequately allege that the District of Columbia's "deliberate indifference" caused Plaintiff's injury. *Baker*, 326 F.3d at 1306. "Deliberate indifference is a 'stringent standard,' which requires that the municipality have 'actual or

constructive notice' of the risk that its employees will violate constitutional rights." *McComb v. Ross*, 202 F. Supp. 3d 11, 17 (D.D.C. 2016) (quoting *Connick*, 563 U.S. at 61).   The Complaint, however, simply alleges that the District of Columbia breached its duty by "improperly training, authorizing, encouraging or directing officers on proper use of force, failing to investigate allegations of excessive force, and failing to discipline officers for violations of policies, practices and customs related to excessive force."  Compl. ¶ 33.   This form of conclusory "failure to train and supervise" allegation says nothing at all about "a pattern of similar constitutional violations" that would have placed the District of Columbia on notice of the risk that Officer Leo might violate Plaintiff's constitutional rights in the manner alleged.  *Mancuso*, 999 F. Supp. 2d at 283.   Such allegations do not plausibly show "deliberate indifference" under the *Twombly* and *Iqbal* pleading standard.  *See Ralls Corp.*, 758 F.3d at 315; *Mancuso*, 999 F. Supp. 2d at 284.

Nor does Plaintiff's allegation that the District of Columbia failed to investigate or discipline Officer Leo and his fellow MPD officers for their involvement in Plaintiff's injury establish "deliberate indifference."  *See* Compl. ¶ 34.  As a threshold matter, a singular instance of alleged wrongdoing, like Officer Leo's shooting here, is generally insufficient place the District of Columbia on notice of a flawed training or supervisory policy.  *See Connick*, 563 U.S. at 62. More fundamentally, however, the Complaint offers no factual basis for the proposition that the District of Columbia's alleged failure to discipline or supervise in this case was itself the cause of Plaintiff's present injury.  *See Mancuso*, 999 F. Supp. 2d at 283–84.  Indeed, this assertion would face a chronological impediment, as the shooting by Officer Leo at issue *now* could not have placed the District of Columbia on notice of such a risk *before* that action occurred.  *Cf. McComb*, 202 F. Supp. 3d at 17–18 (finding plausible allegations of deliberate indifference based on "an extensive history of complaints involving similar conduct in the 33 months *prior* to the incident involving

12

plaintiff") (emphasis added).   In sum, the Complaint offers no specific factual allegations to plausibly allege that the District of Columbia was deliberately indifferent to a pattern of wrongdoing, which itself caused Plaintiff's alleged injury in this case.   As such, Plaintiff has presented no plausible method in his Complaint by which to state a § 1983 claim for municipal liability against the District of Columbia.

### 2.  Negligent Training and Supervision

In Count II of the Complaint, Plaintiff asserts a negligent training and supervision claim "jointly and severally" against Officer Leo and the District of Columbia.  *See* Compl. ¶¶ 26–28. To state a claim for negligent training and supervision, a plaintiff must show that the defendant knew or should have known that its employee behaved in a dangerous or otherwise incompetent manner, and that the defendant, having such knowledge, failed to adequately supervise or train the employee.  *District of Columbia v. Tulin*, 994 A.2d 788, 794 (D.C. 2010); *see also Harvey v. Kasco*, 109 F. Supp. 3d 173, 179 (D.D.C. 2015).   Moreover, the plaintiff must show that the employer's failure to train or supervise was the proximate cause of the injury alleged.  *Clark v. Computer Sci. Corp.*, 958 F. Supp. 2d 208, 214 (D.D.C. 2013).

To start, the Complaint has not alleged any facts that could plausibly state such a claim against Officer Leo.  This is understandable.  Officer Leo is, himself, the employee that the District of Columbia allegedly failed to train and supervise.  *See* Compl. ¶ 19.  Defendants identify this anomaly in their Motion, *see* Defs.' Mot. at 19, and Plaintiff's opposition provides no response. In fact, Plaintiff appears to clarify in his opposition that his negligent training and supervision claim applies only to the District of Columbia.  *See* Pl.'s Opp'n at 5.  For these reasons, the Court finds that the Complaint does not state a plausible claim for negligent training and supervision against Officer Leo.

Neither, however, does the Complaint state a plausible negligent training or supervision claim against the District of Columbia.  As discussed, Plaintiff's allegations regarding the District of Columbia's failure to train or supervise are entirely conclusory.  *See* Compl. ¶¶ 19–21.  These allegations merely state that the District of Columbia failed to train and supervise Officer Leo, without providing "any facts regarding the District of Columbia's knowledge that one of its officers would allegedly use excessive force in . . . a single incident, or that other officers would fail to intercede." *Harvey*, 109 F. Supp. 3d at 179.  In fact, Plaintiff's specific claim for negligent training and supervision in Count II of the Complaint does not even mention the District of Columbia outside of the demand for judgment therein.  *See* Compl. ¶¶ 26–28; *Rice*, 774 F. Supp. 2d at 33 ("An individual count must contain a plausible recitation of enough facts to support it.").  Defendants expressly raise these pleading deficiencies in their Motion, *see* Defs.' Mot. at 17, but Plaintiff provides no clear response in his opposition, *see* Order, ECF No. 5, ¶ 10(B) ("[W]here a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded.").  For these reasons, the Court concludes that the Complaint has not stated a plausible claim for negligent training or supervision against the District of Columbia.

### 3. Negligent Inflation of Emotional Distress

Finally, in Count I of the Complaint, Plaintiff asserts a claim for negligent infliction of emotional distress against both Officer Leo and the District of Columbia. *See* Compl.  ¶¶ 22–25.  "In the District of Columbia, there are two ways that a plaintiff may state a claim for the negligent infliction of emotional distress—the zone of danger rule or the special relationship rule." *Whittaker v. Court Servs. & Offender Supervision Agency for D.C.*, 401 F. Supp. 3d 170, 186 (D.D.C. 2019).  "Under the zone of danger rule, a plaintiff must allege that: (1) the plaintiff was in a zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff

14

feared for [his] own safety, and (4) the emotional distress caused was serious and verifiable." *Id.* (quotation omitted). "Under the special relationship rule, a plaintiff must allege that: (1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Id.* (quotation omitted).

Plaintiff has not alleged a plausible claim for negligent infliction of emotional distress under either standard.  First, the Complaint makes no clear allegation of negligent conduct. Instead, the Complaint alleges that Officer Leo tailed Plaintiff in a police vehicle, *see* Compl. ¶¶ 8–10, and subsequently fired his gun directly and repeatedly at Plaintiff, *see id.* ¶¶ 11–13, 24.  As Defendants argue, this alleged conduct is ostensibly *intentional* and, therefore, mutually exclusive with a claim predicated on negligence.  *See* Defs.' Mot. at 15; *see also Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 916 (D.C. Cir. 2015).  Such reliance on allegedly intentional conduct contravenes the principle that "when a negligence claim involves use of excessive force by a police officer, the 'negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care.'" *Daniels v. District of Columbia*, 894 F. Supp. 2d 61, 69 (D.D.C. 2012) (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 705 (D.C. 2003)). The Complaint lacks any such allegations and Plaintiff, again, does not address this argument in his opposition. *See* Order, ECF No. 5, ¶ 10(B).  Accordingly, the Court concludes that the Complaint does not state a claim for negligent infliction of emotional distress against Officer Leo.

The Complaint also fails to state such a claim against the District of Columbia.  The Complaint makes no allegations whatsoever that the District of Columbia itself was directly liable to Plaintiff under a negligence theory.  *See* Defs.' Mot. at 16.  Instead, the Complaint appears to ground Plaintiff's claim of negligent infliction of emotional distress against the District of Columbia on a *respondeat superior* theory.  *See* Compl. ¶¶ 1, 22–25.  But this theory of liability cannot proceed at this juncture where the predicate claim against Officer Leo fails as a matter of law.  *See Williams v. District of Columbia*, 268 F. Supp. 3d 178, 184 n.1 (D.D.C. 2017); *Black v. District of Columbia*, 480 F. Supp. 2d 136, 141 (D.D.C. 2007) (finding no basis for vicarious liability where predicate claims against employees were dismissed).  The Court, therefore, must also dismiss Plaintiff's negligent infliction of emotional distress claim, as it applies to the District of Columbia.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion and **DISMISSES** Plaintiff's Complaint **WITHOUT PREJUDICE**.  Specifically, the Court dismisses Plaintiff's common law claims against the District of Columbia in Counts I and II of the Complaint because Plaintiff has not demonstrated compliance with the notice requirements of D.C. Code § 12-309.  The Court also dismisses each of Plaintiff's claims against the District of Columbia for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  Finally, the Court dismisses each of Plaintiff's claims against Officer Leo, in his individual capacity, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  An appropriate Order accompanies this Memorandum Opinion.

**Date**:  November 2, 2020

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

16