## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JERMAINE WOODS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-0782 (CKK) |
| | ) |
| DISTRICT OF COLUMBIA and DANIEL | ) |
| LEO, | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO STRIKE THE AMENDED COMPLAINT

### INTRODUCTION

This is an action involving an incident in which a member of the District of Columbia's Metropolitan Police Department ("MPD") fired eight to ten shots at the unarmed Plaintiff, Jermaine Woods, then mistakenly arrested and detained him before letting him go with the explanation that he was simply in the wrong place at the wrong time. Under its own policies and procedures, the MPD was required to investigate the incident and then prepare and file various reports, including a "Use of Force Report" ("UF Report"). No such reports were ever prepared or issued, however. In his proposed Amended Complaint, Mr. Woods has asserted two causes of action, both under 42 U.S.C. § 1983. The first is against Officer Fred Rosario, who fired the shots at Mr. Woods and arrested him, for use of unjustified and excessive force in violation of Mr. Woods' constitutional rights. The second is against Officer Rosario and two supervisory members of the MPD, Sergeant David Lack and Lieutenant Scott Siegel, for conspiring to violate Mr. Woods' constitutional rights. In particular, Mr. Woods has alleged that those three Defendants

discussed and agreed not to investigate and file the required reports, thus impeding Mr. Woods'
ability to learn the facts about the shooting and file the appropriate civil action.

In its October 28, 2021 Order (Doc. 26), the Court gave Mr. Woods leave to file this
Supplemental Brief to address one issue: "why Count II of the [proposed Amended Complaint]
states a plausible civil conspiracy claim that survives Defendants' futility challenge." (Order at
4.) Mr. Woods' allegations are more than sufficient to state a plausible civil-conspiracy claim
and survive the futility challenge. It strains credulity to believe that each of the Defendants
independently decided to shirk their sworn duties as members of the MPD and not participate in
investigating Officer Rosario's serious shooting incident or filing any of the required reports. It
is at least as plausible, and indeed more so, that, as Mr. Woods has alleged, the Defendants
discussed what to do before agreeing to cover up the incident by not preparing and filing the
required reports.  Equally significant, in the context of a civil conspiracy, which prior to
discovery can rarely be proven by direct evidence of an express agreement that is sufficient to
state a claim.

## STANDARD OF REVIEW

Leave to amend a complaint should generally be freely given when justice so requires. Fed.
R. Civ. P. 15(a)(2). Leave to amend may be denied in the court's discretion when amendment
would be futile, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), as, for example, when a new claim
in a proposed amended complaint would not survive a motion to dismiss under Fed. R. Civ. P.
12(b)(6), *see In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213, 215 (D.C. Cir. 2010).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "only enough
facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ronaldson v. Nat'l Ass'n of Home Builders*, 502 F. Supp. 3d 290, 296 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Ramos v. ADR Vantage, Inc.*, No. 18-CV-01690 (APM), 2018 WL 6680531, at *3 (D.D.C. Dec. 19, 2018) (plaintiff pleaded plausible claim of civil conspiracy, even if actual proof of the facts alleged seemed improbable). In evaluating a Rule 12(b)(6) motion, the court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pled factual allegations." *Ronaldson*, 502 F. Supp. 3d at 296; *see also Twombly*, 550 U.S. at 555 (in determining whether a claim is plausible, the court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)").

## ARGUMENT

### COUNT II OF THE PROPOSED AMENDED COMPLAINT STATES A PLAUSIBLE CIVIL CONSPIRACY CLAIM THAT SURVIVES THE DEFENDANTS' FUTILITY CHALLENGE

The elements of a civil-conspiracy claim are:

(1) an agreement between two or more persons; (2) to commit an unlawful action, or to commit a lawful act by unlawful means; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and (4) the overt act was done pursuant to a common scheme.

*Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007) (citing *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). However, the plaintiff need not allege or prove that the defendants entered into an "express or formal agreement." *Lagayan v. Odeh*, 199 F. Supp. 3d 21, 30 (D.D.C. 2016) (quoting *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 134 (D.D.C.

2014)); *accord Ramos*, 2018 WL 6680531, at *3. That is because "conspiracies are rarely evidenced by explicit agreements, but nearly always must be proven through inferences that may be fairly drawn from the behavior of the alleged conspirators." *Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 81 F. Supp. 3d 1, 11 (D.D.C. 2015) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012)). As the District of Columbia Circuit has explained,

> courts have to infer an agreement from indirect evidence in most civil conspiracy cases. The circumstances of the wrongdoing generally dictate what evidence is relevant or available in deciding whether an agreement exists. Factors like the relationship between the parties' acts, the time and place of their execution, and the duration of the joint activity influence the determination.

*Halberstam*, 705 F.2d at 486.

The secretive nature of a conspiracy affects what is required to plead a plausible civil-conspiracy claim. At the pleading stage, "a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' i.e., it must provide 'some factual context suggesting that the parties reached an agreement,' not facts that would be 'merely consistent' with an agreement." *Anderson News*, 680 F.3d at 184 (cleaned up) (quoting *Twombly*, 550 U.S. at 556); *see also In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 61 (D.D.C. 2016) ("as *Twombly* notes, this Court should consider the context in which the alleged conspiracy arises" (citing *Twombly*, 550 U.S. at 557)). So, for example, while a bare "allegation of mere parallel conduct is not enough," *Lagayan*, 199 F. Supp. 3d at 30, allegations of parallel conduct "placed in a context that raises a suggestion of a preceding agreement" are sufficient to state a civil-conspiracy claim, *Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d at 58 (quoting *Twombly*, 550 U.S. at 557); *accord Oxbow*, 81 F. Supp. 3d at 11-12 (conspiracy allegations were sufficient and not conclusory where they "'raise[d] a reasonable expectation that discovery will reveal evidence of illegal agreement' and place[d] the allegations

of parallel conduct 'in a context that raises a suggestion of a preceding agreement'" (quoting *Twombly*, 550 U.S. at 556-57)). As such, allegations of parallel conduct are sufficient when, made in combination with other circumstantial evidence concerning the context, including the "when" and "what" of the conspiracy, they "'raise a right to relief above the speculative level.'" *Oxbow*, 81 F. Supp. 3d at 13 (quoting *Twombly*, 550 U.S. at 555); *see also Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d at 60 (finding that plaintiffs sufficiently pleaded plausible conspiracy claim based on circumstantial evidence, including "the specific time, place, and persons involved in the alleged conspiracy such that Defendants ha[d] fair notice of the claims against them").

The allegations to support the civil-conspiracy claim in Mr. Woods' proposed Amended Complaint are sufficient under these standards. The proposed Amended Complaint sets the context: at the time in question, Officer Rosario was an officer with the MPD, while Sgt. Lack and Lt. Siegel were supervisory members of the MPD. (Am. Compl. ¶¶ 5-7.) On January 18, 2017, Mr. Woods exited a vehicle and walked toward the gate behind his house, at which time Officer Rosario pulled his service weapon and fired eight to ten shots at Mr. Woods, miraculously not killing him in the process (*Id.* ¶¶ 13, 38.) Officer Rosario arrested and interrogated Mr. Woods, then transferred him to the Fifth District Police Station, before Mr. Woods was transported to Providence Hospital for the treatment of his physical injuries resulting from the shooting incident. (*Id.* ¶¶ 15-16.) At the hospital, Mr. Woods was released after MPD supervisors admitted that he was just in the wrong place at the wrong time and his arrest would be nullified. (*Id.* ¶ 17.)

Because Officer Rosario had used force, including discharging his service weapon (multiple times), MPD policies and procedures required, among other things, that a Use of Force Determination be made and a UF Report be prepared. (*Id.* ¶¶ 18-21.) In particular, Officer

Rosario's supervisor, Sgt. Lack and Lt. Siegel "were required to take appropriate steps to ensure that [Officer] Rosario's use of force was properly, truthfully, and accurately reported" and "to document all events connected with the circumstances of [Mr. Woods'] shooting incident." (*Id.* ¶¶ 24-25.) But none of the required reports, including the UF Report, were ever prepared. (*Id.* ¶ 20.)

To the contrary, Officer Rosario, Sgt. Lack, and Lt. Siegel "deliberately did not prepare an UF Report; failed to create and maintain an arrest report; failed to prepare a PD 42 [hospital treatment report]; and failed to review the UF incident along with body camera footage regarding" Officer Rosario's shooting and arrest of Mr. Woods. (*Id.* ¶ 27.) Because it was their duty under MPD policies and procedures to prepare those reports and take all of those actions, Mr. Woods has alleged that Officer Rosario, Sgt. Lack, and Lt. Siegel "necessarily discussed with one or more MPD managers the underlying Rosario shooting and [those] applicable policies and procedures." (*Id.* ¶ 28.)

The absence of such a report demonstrates the concealment of critical facts which underlie Plaintiff's victimization about which he would otherwise have no knowledge. Despite having discussed the shooting incident and the applicable MPD policies and procedures, Officer Rosario, Sgt. Lack, and Lt. Siegel "agreed among themselves" not to take any of the required actions, thereby concealing and covering up Officer Rosario's misconduct and depriving Mr. Woods of the information needed to access the courts and vindicate his civil rights. (*Id.* ¶¶ 29, 42.)

The Court expressed concern in its Order that these might be considered nothing more than bare allegations of parallel conduct. (Order at 4.) That is simply not the case. Under the "circumstances of the wrongdoing" alleged by Mr. Woods, *Halberstam*, 705 F.2d at 486, it would actually be much more implausible to conclude that his allegations demonstrate only that Officer

Rosario, Sgt. Lack, and Lt. Siegel each decided independently to shirk their sworn responsibilities as members of the MPD.

What *is* plausible is exactly what is, in fact, alleged in the proposed Amended Complaint, that is, that Officer Rosario, Sgt. Lack, and Lt. Siegel specifically discussed and agreed that they would cover up Officer Rosario's use of excessive force by not undertaking any of the actions— investigating the incident and filing the necessary reports—required as a result of Officer Rosario's use of force, including discharging his weapon multiple times, in mistakenly arresting Mr. Woods. The complaint alleges a stop, the details surrounding the stop, the arrent, the release and the absence of a UF document. These allegations, which "need not eliminate the possibility of independent action" by the Defendants in any event, give "ample reason to infer that [they] engaged in a conspiracy." *Oxbow*, 81 F. Supp. 3d at 13; *see also Anderson News*, 680 F.3d at 185 (a court ruling on a Rule 12(b)(6) motion "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible").

The Court also stated in its Order that it is not clear from the proposed Amended Complaint "precisely how an 'overt act' in furtherance of Defendants' alleged 'common scheme' caused an injury to" Mr. Woods. (Order at 4.) But that is explained in the proposed Amended Complaint as well. The overt acts committed by the Defendants in furtherance of their scheme to cover up Officer Rosario's excessive use of force were actually sins of omission, that is, the officers deliberately failed to carry out a required investigation and to prepare and file the reports required by MPD policies and procedures in response to the shooting incident. (*See* Am. Compl. ¶¶ 5, 6, 9, 18-29, 42.) . (*See id.* ¶¶ 29, 42.)  This is the primary reason that the Amended Complaint names Officer Rosario as the shooter.   The facts pled in the Amended Complaint show that it was impossible for him to determine them earlier due to the Defendants' collaborative concealment of

the underlying event, This concealment precluded Plaintiff from learning the factual basis for his constitutional claims.

## CONCLUSION

For the foregoing reasons, Mr. Woods has plausibly alleged each of the elements of his constitutional conspiracy cause of action. Therefore, the Court should deny the Defendants' futility challenge to Count II of the proposed Amended Complaint,

Respectfully submitted,

*/s/ Donald M. Temple*
Donald M. Temple (#408749)
1310 L Street, N.W., Suite 750
Washington, D.C. 20005
Tel: (202) 628-1101
Email: dtemplelaw@gmail.com
Attorney for the Plaintiff